# Application of 31 U.S.C. § 3302(b) to Settlement of Suit Brought by the United States

The requirement in 31 U.S.C. § 3302(b) that money received for the Government be deposited in the United States Treasury does not apply in a case in which the United States asserted no claim for money damages or penalties, and will receive no money from a health care program managed for private plaintiffs.

February 18, 1983

MEMORANDUM OPINION FOR THE CHIEF, ENVIRONMENTAL ENFORCEMENT SECTION, LAND AND NATURAL RESOURCES DIVISION

You have requested the views of this Office regarding the proposed settlement in *United States* v. *Olin Corp.*, a civil action now pending in the District Court for the Northern District of Alabama. The action was brought for equitable relief, including an injunction ordering remedial action, and for recovery of costs and expenses as a result of the unlawful discharge by Olin of DDT into the waters of the United States and into a federal wildlife refuge. The first amended complaint alleged causes of action based upon the Refuse Act, 33 U.S.C. 407; the Resource Conservation and Recovery Act, 42 U.S.C. 6973a; the Clean Water Act, 33 U.S.C. § 1364; the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9606; the common law of nuisance; and restitution.

With regard to the CERCLA count in particular, the complaint alleged that "[t]here is or may be an imminent and substantial endangerment to the public health or the environment because of the actual or threatened release of hazardous substances from the [defendant's] chemical plant site and drainage ditch." On the basis of this and the other allegations, the complaint prayed for entry of a mandatory permanent injunction requiring, among other things, that Olin restore the environment in the vicinity of its chemical plant. The prayer for relief also included a requirement that Olin assure the performance of comprehensive health studies on the residents living in the vicinity of its plant and long-term monitoring of their health. The Government sought no monetary damages or penalties.

A number of private plaintiffs brought separate actions against Olin. Although the cases were never consolidated with the Government's action, one settlement was proposed in satisfaction of all claims. On December 16, 1982, the court set forth the terms on which all parties had tentatively agreed to settle the litigation. The private damages claims would be settled for a total of $24

million, to be paid by Olin over a period of five years. In satisfaction of the Government's claim relating to health care, the proposed settlement provides that out of each annual payment to the private plaintiffs, $1 million would be paid into a trust fund established and managed to provide medical monitoring and assistance to all claimants over a period of ten years. The proposed settlement further provides that "[t]he details of the program will be established by the federal government and the plaintiffs;" that "[a]ny impasse will be resolved in favor of the federal government position;" and that "[a]ny money left in the fund at the end of 10 years will be returned to the settling plaintiffs." Finally, the proposed settlement provides that medical monitoring would be available to any person in the immediate area of Traina, Alabama, near Olin's chemical plant, upon that person's executing a full release to the United States and to Olin.

You have asked whether the proposed settlement is consistent with 31 U.S.C. § 3302(b) (former § 484),[1] which provides:

> An official or agent of the Government receiving money for the Government from any source shall deposit the money in the Treasury as soon as practicable without deduction for any charge or claim.

This Office has previously considered the effect of 31 U.S.C. § 484,[2] the predecessor to § 3302(b), in the context of a settlement in *In the Matter of Steuart Transportation Co.*, a civil action brought by the United States and the State of Virginia following an oil spill in the Chesapeake Bay. In that case, each plaintiff sought damages for the death of waterfowl, statutory penalties, and cleanup costs. The settlement provided that Steuart Transportation would pay damages of $115,000, which would be donated to a waterfowl preservation organization designated jointly by the State of Virginia and the Department of the Interior. In 1980, this Office concluded that Federal participation in accepting and directing the payment would violate 31 U.S.C. § 484. We reasoned that under the facts of that case, it could not be concluded that the money was not "received" or that it was not received "for the use of the United States" on the theory that it was received in trust for the people of Virginia and the citizens of the United States. "Effect of 31 U.S.C. § 484 on the Settlement Authority of the Attorney General," 4B Op. O.L.C. 684 (1980).[3]

---

[1] By Pub. L. No. 97–258, 96 Stat. 877 (1982), Congress enacted Title 31, United States Code, into law. Former § 484 was codified as § 3302(b).

[2] Former § 484 provided in pertinent part·

> The gross amount of all moneys from whatever source shall be paid by the officer or agent receiving the same into the Treasury, at as early a day as practicable, without any abatement or deduction on account of salary, fees, costs, charges, expenses, or claim of any description whatever. . . .

No substantive change was intended by the enactment of former § 484 as § 3302(b). *See* Pub. L. No. 97–258, § 4, 96 Stat. 877, 948 (1982); H.R. Rep. No. 97–751, 97th Cong., 2d Sess. 2 (1982).

[3] The relevant language under current § 3302(b) is "receiv[ed] . . . for the Government." The House Report accompanying the bill indicates that the change was made "to eliminate unnecessary words." H.R. Rep. No. 97–651, *supra*, at 98. No substantive change was intended. *See supra* note 2.

In our view, the proposed settlement in the *Olin* case presents no problem under § 3302(b). Because the Government asserted no claim for money damages or penalties, we do not believe that any portion of the $24 million is appropriately viewed as "receiv[ed] . . . for the Government" within the meaning of § 3302(b). The entitlement to the funds belongs solely to the private plaintiffs who asserted monetary claims against Olin. The Government's specific request that the court earmark $5 million of the $24 million general settlement to be used in satisfaction of its health-care claim does not change the entitlement to or receipt of the funds. The proposed settlement, in fact, specifically reflects that any money remaining in the trust fund at the end of ten years will be returned to the settling private plaintiffs.

The Government's prayer for a health care remedy would undoubtedly have entailed a financial cost to Olin, but the monetary expenditure required of a defendant in order to comply with a court injunction does not constitute money received for the Government by an official or agent of the Government. Section 3302(b) is a statutory aid to the control by Congress over public expenditures, committed to the Legislative Branch by Article I, § 8, cl. 1 of the Constitution. The earliest version of the statute was proposed to curb unlimited discretion previously enjoyed by the Executive to take deductions from revenue collections. According to the bill's sponsor, the provision required that all money received as revenue be paid into the Treasury and thereafter be expended only upon appropriation by Congress. *See* 18 Cong. Globe 46364 (1848) (remarks of Rep. McKay). An equitable remedy obtained by the Government in litigation, albeit one with financial cost to the defendant, is simply not within the purview of § 3302, either by its terms or its purpose.

Similarly, we do not believe that federal participation in working out the details of the health care program implicates the restrictions of § 3302(b). This participation is not appropriately equated with the designation of the waterfowl preservation organization that was at issue in *Steuart Transportation Co.* Because no money is received by the Government as a result of the settlement, no Government money is redirected or expended simply by the Government's participation in the administration of the health care program.

RALPH W. TARR
*Deputy Assistant Attorney General*
*Office of Legal Counsel*